DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Oriana House, Inc. ("Oriana"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Betty D. Montgomery, Auditor of State ("AOS"), to justify the withholding of documents under certain limited exceptions provided by law with regard to Oriana's public records requests dated February 3 and February 26, 2004, and ordering AOS to respond to Oriana's March 19, 2004 request for public records under R.C. 149. AOS has filed a counterclaim requesting that this court issue a writ of mandamus finding that Oriana is a public office under the Ohio Public Records Law and ordering Oriana and/or Automatic Data Processing ("ADP") to turn over records AOS has requested pursuant to R.C. 149.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court grant in part and deny in part both Oriana's and AOS's requests for writs of mandamus. (Attached as Appendix A.) Oriana and AOS have filed objections to the magistrate's decision.
 {¶ 3} AOS's sole objection is that the magistrate erred in finding that the documents designated as In Camera Exhibits 31(c), 31(d), 32(c), and 32(d), which contained communications between AOS and its in-house counsel, were subject to disclosure because they did not fall under the protections afforded by the attorney-client privilege. Since the magistrate issued her decision, the Ohio Supreme Court decided State exrel. Leslie v. Ohio Hous. Fin. Agency, 105 Ohio St.3d 261, 2005-Ohio-1508, which reversed this court's decision in State ex rel. Leslie v. OhioHous. Fin. Agency, Franklin App. No. 02AP-1147, 2003-Ohio-6560. InLeslie, the Ohio Supreme Court found that the common-law attorney-client privilege applies to state agencies and their in-house counsel, even if that counsel is not an Assistant Attorney General. Id. at ¶ 43. Therefore, applying Leslie to the present case, we find the documents designated as In Camera Exhibits 31(c), 31(d), 32(c), and 32(d), which contained communications between AOS and its in-house counsel, were not subject to disclosure because such communications were protected by the attorney-client privilege. AOS's objection is sustained.
 {¶ 4} Although Oriana's objections consist largely of reassertions of the same arguments addressed and rejected by the magistrate, it does raise several arguments with respect to specific findings of the magistrate. Oriana argues in its first objection that the magistrate erred in concluding it was a "public institution" and, therefore, a "public office," so as to be subject to the Public Records Act under R.C.149.43. Oriana first asserts that the magistrate wrongfully concluded that it continues to receive public money to operate. Oriana's contention is that, because the Summit County Judicial Corrections Board ("JCB") and Summit County are the entities that actually receive the grant monies from the Ohio Department of Rehabilitation and Correction ("ODRC"), Oriana does not receive public money. However, that the public money is first received by other public agencies that then pass it on to Oriana does not wash the monies of their public character. The evidence revealed that at least 88 percent of Oriana's total income has its genesis in public sources, and all of the public money provided to Summit County and JCB for the operation of the Summit County community-based correctional facility ("CBCF") is given to Oriana. Thus, we agree with the magistrate that Oriana receives public funds to operate. Therefore, this argument is without merit.
 {¶ 5} Oriana also argues that, in finding it to be a "public office," the magistrate made several invalid distinctions between the present case and State ex rel. Stys v. Parma Community Gen. Hosp. (2001),93 Ohio St.3d 438. We disagree. First, Oriana asserts that the magistrate erred in finding that AOS had indicated numerous concerns with JCB's oversight of Oriana's operations. Oriana claims there is no evidence to suggest that JCB has been delinquent in its oversight duties. However, the performance work papers and other documents in the record identified various concerns the AOS had with regard to JCB's operations, including JCB's lack of by-laws or operating procedures; JCB's failure to put in place monitoring and oversight procedures; a lack of fiscal monitoring controls in the contract between Oriana, Summit County, and JCB; JCB's failure to hold regular meetings and maintain minutes; JCB's allowance of Oriana to operate the CBCF without any guidance from the JCB regarding formation of programs; and JCB's failure to create any rules of operation or policies and procedures regarding Oriana. This evidence supports the magistrate's conclusion that AOS had concerns with JCB's oversight of Oriana's operations. Therefore, Oriana's argument, in this respect, is without merit.
 {¶ 6} Second, Oriana asserts the magistrate erred in finding that James Lawrence's simultaneous service as the Director of the Summit County CBCF, President of Oriana House, Inc., and President of Oriana's wholly owned subsidiary, Correctional Health Services, Inc. ("CHS"), demonstrated that Oriana's board of directors lacked independence. However, despite Oriana's characterization of the magistrate's finding as "ludicrous," we find the magistrate's point well-grounded. In OrianaHouse, Inc. v. Montgomery, Franklin App. No. 03AP-1178, 2004-Ohio-4788, at ¶ 32, we stated that it was difficult to understand how the board of Oriana failed to notice the conflict of interest posed by Lawrence's simultaneous rolls with Oriana, CHS, and the CBCF. Thus, given the obvious nature of this apparent conflict and the failure of Oriana's board of directors to address it, it was reasonable for the magistrate to question the independence of Oriana's board of directors. Therefore, this argument is without merit.
 {¶ 7} Third, Oriana argues that the magistrate erred in finding that, if Oriana is not subject to the public records request, then the public has no access to any of the records. Oriana claims JCB, in fact, holds a complete copy of all files relative to Oriana. However, Oriana fails to cite where evidence of such can be found in the record. Further, even if it were true that JCB retains copies of every record kept by Oriana, nothing prevents AOS from choosing to request the records from Oriana instead of JCB. Therefore, this argument is also without merit.
 {¶ 8} Fourth, Oriana contends the magistrate erred in finding that the operation of prisons is historically a governmental function. Oriana claims that CBCFs are not prisons and were created by the state as an alternative to prisons. However, in finding that the operation of prisons is historically a governmental function, the magistrate did not characterize Oriana as a prison itself; rather, the magistrate was characterizing the types of services provided by Oriana as being the type that a governmental prison system would provide, such as alternative sentence programs and treatment facilities for convicted felons. Further, that Oriana is engaging in an activity that is historically a governmental function is also evinced by the fact that Oriana is capitalized by, overseen by, and organized with the approval of the governmental agency responsible for the operation of the prison system in Ohio, ODRC. Therefore, we find Oriana's argument, in this respect, to be without merit. Accordingly, for the above reasons, Oriana's first objection is overruled.
 {¶ 9} Oriana also objects to the magistrate's finding that its March 19, 2004 public records request was overly broad. Oriana claims that the magistrate's conclusions were inconsistent, in that she found AOS should have produced documents that were addressed to or from Alex Arshinkoff or the Summit County Republican Party, but then found that AOS was not required to produce documents to or from any of the Summit County Republican Party's employees, board members, representatives, lobbyists, agents, or consultants. However, the difference between the two requests is apparent. With regard to Arshinkoff and the Summit County Republican Party, documents addressed to or from these parties would be identifiable on their face, while documents addressed to or from the Summit County Republican Party's employees, board members, representatives, lobbyists, agents, or consultants would require AOS to conduct their own research into which persons fell into these titles, groups, and categories. Further, several of these later categories are vague, and determining which persons fall within them would be open to interpretation. Thus, the magistrate properly found that Oriana's request was both proper in part and overly broad in part, and this objection is overruled.
 {¶ 10} With regard to Oriana's objections related to whether the documents requested by AOS were "public records," whether the magistrate erred in failing to permit it to depose certain employees of AOS, and whether the records withheld by AOS constituted confidential law enforcement investigatory records, Oriana basically reiterates the same arguments it made before the magistrate. After a review of these arguments and the magistrate's analysis of each, we agree with the magistrate's findings with respect to the pertinent issues. Therefore, the objections relating to these matters are without merit.
 {¶ 11} After an examination of the magistrate's decision, an independent review of the record, pursuant to Civ.R. 53, and due consideration of Oriana's and AOS's objections, we find AOS's objection to be with merit and sustain such, but we find Oriana's objections to be without merit and overrule such. Accordingly, we reverse the magistrate's decision with regard to the issue of the attorney-client privilege raised by AOS, but adopt the magistrate's decision with regard to the issues raised by Oriana and in all other respects. Oriana's request for a writ of mandamus is granted in part and denied in part, and AOS's request for a writ of mandamus is granted in part and denied in part, consistent with this decision and the decision of the magistrate.
Objections sustain in part and overruled in part; writs of mandamusgranted in part and denied in part.
Petree and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
The State of Ohio ex rel. :
Oriana House, Inc., :
 Relator, : Nos. 04AP-492
 : and 04AP-504
v. : (REGULAR CALENDAR)
Betty Montgomery, Auditor of State, :
 Respondent. :
 MAGISTRATE'S DECISION Rendered on December 30, 2004 Benesch, Friedlander, Coplan Aronoff LLP, Orla E. Collier, III andFrank J. Reed, Jr.; Teamor Associates, Ricardo B. Teamer, CherylMackey Bayard and April N. Hart, for relator.
Jim Petro, Attorney General; Isaac, Brant, Ledman Teetor, LLP, MarkLandes and Matthew T. Hollis, special counsel for respondent.
In Mandamus
 {¶ 12} Relator, Oriana House, Inc. ("Oriana"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Betty D. Mongtomery, Auditor of State ("AOS"), to justify the withholding of documents under certain limited exceptions provided by law with regard to Oriana's public records requests dated February 3, and February 26, 2004, and ordering AOS to respond to Oriana's March 19, 2004 request for public records under R.C. Chapter 149. AOS has filed a counterclaim requesting that this court find that Oriana is a public office under the Ohio Public Records Law and ordering Oriana and/or Automatic Data Processing ("ADP") to turn over records AOS has requested pursuant to R.C. Chapter 149.
Findings of Fact:
 {¶ 13} 1. Oriana is a private, nonprofit Ohio corporation, organized under R.C. Chapter 1702, which provides community corrections and chemical dependency treatment facilities and programs for convicted felons in Summit County, Ohio and elsewhere in the state of Ohio under contract to various governmental and non-governmental entities.
 {¶ 14} 2. Respondent Betty D. Montgomery is the Auditor of the State of Ohio.
 {¶ 15} 3. In 1987, the judges of the Summit County Court of Common Pleas formed the Summit County Judicial Corrections Board ("JCB") and submitted a proposal to the Ohio Department of Rehabilitation and Correction ("ODRC") to operate a community-based correctional facility ("CBCF") program for Summit County. The proposal was approved by ODRC.
 {¶ 16} 4. The county of Summit applied for funding from ODRC for the operation of its CBCF. The proposal indicates that Oriana is the "implementing agency" of the Summit County CBCF and that the CBCF director and planner is James J. Lawrence, who is also the president of Oriana.
 {¶ 17} 5. Oriana provides all the CBCF programs in Summit County, Ohio and performs the day-to-day operations of the CBCFs under contract with the JCB.
 {¶ 18} 6. Oriana receives all of the money which Summit county receives from ODRC for the operation of the CBCF. For the grant year 2002-2003, that amount equaled $5,038,167.
 {¶ 19} 7. In 2002, AOS began a performance audit of the Summit County CBCF.
 {¶ 20} 8. The performance audit was completed and released November 25, 2003.
 {¶ 21} 9. In late January 2003, AOS announced its intention to conduct a special audit of the Summit County CBCF and Oriana. This special audit is ongoing.
 {¶ 22} 10. AOS has issued several subpoenas during the course of this special audit, related to Oriana and its subsidiaries, seeking various documents.
 {¶ 23} 11. On September 12, 2003, Oriana filed an action in the Franklin County Court of Common Pleas seeking preliminary and permanent injunctions and declaratory judgment alleging that AOS did not have the authority to conduct the special audit of the Summit County CBCF and that AOS did not have the authority to subpoena various documents in the possession of third parties.
 {¶ 24} 12. On October 31, 2003, the trial court issued its decision finding that AOS had the authority to conduct the special audit and to subpoena relevant documents from third parties.
 {¶ 25} 13. Oriana appealed the matter to this court.
 {¶ 26} 14. On September 9, 2004, this court issued its decision inOriana House v. Auditor of State, Franklin App. No. 03AP-1178, 2004-Ohio-4788. In that case, this court found that Oriana is a nonprofit corporation and the sole entity contracted to operate the Summit County CBCF; that Oriana provides 100 percent of the day-to-day operations of the Summit County CBCF and receives 100 percent of the grant funding provided by the ODRC to Summit County for the operation of the Summit County CBCF; that Oriana is required to observe the spending limits set forth in the terms of the grant; that Oriana is performing a governmental function; that, in 2001, Oriana received over $24 million for its operations, of which approximately 88 percent was from public sources; that in fiscal year 2005, Oriana requested and received over $5 million in grant funding from ODRC; that AOS was authorized to conduct the special audit of Oriana and its subsidiaries; and that AOS was authorized to subpoena documents in the position of private third parties. Specifically, this court determined as follows:
We find the current inquiry to be permitted by law. Oriana receives public money from the Summit County CBCF through a grant from ODRC. CHS [Correctional Health Services] is a wholly-owned for-profit subsidiary of Oriana. Lawrence was the President of both entities at the relevant time. Montgomery must have the authority to subpoena documents in the possession of private third parties that indirectly receive money initially characterized as public money if a relevant link exists. To hold otherwise would allow individuals to receive grant money and use it however they see fit, with no regard as to whether the money is expended in accordance with law or a particular grant agreement. We do not hold that money initially characterized as public money is forever and always public money. In this case, however, there is more than a "relevant link" between the entities, Oriana owns CHS. Accordingly, we turn to whether the subpoenaed documents are relevant to the audit. (Fn. omitted.)
* * * [W]e find the subpoenaed documents are clearly relevant to the audit insofar as they may assist Montgomery in determining whether Oriana complied with the terms of the grant agreements to which it is bound.
It should surprise no one, least of all Lawrence, that Montgomery is examining transactions between Oriana and CHS, as they do not appear to be arm's length transactions between independent entities. Moreover, it is difficult to understand how the governing boards of Oriana, CHS, and the Summit County CBCF missed the apparent conflict of interest arising from these transactions occurring while Lawrence concurrently served as President of both companies and Director of the CBCF.
Saionzkowski's affidavits confirm why the documents sought are needed. The financial records of CHS and Lawrence may provide information related to the expenditure of public money. As such, we do not find the production of these documents would be unreasonably costly or difficult.
Therefore, we find the three-part test set forth in Petro [State exrel. Petro v. N. Coast Villas Ltd. (2000), 136 Ohio App.3d 93], supra, is satisfied. Montgomery (1) has the authority to conduct the audit of Oriana; (2) has the authority to subpoena documents in the possession of private third parties including CHS and Lawrence; and (3) the subpoenaed documents are relevant to determining whether Oriana complied with the terms of the grant agreements. * * *
Id. at ¶ 30-34.
 {¶ 27} 15. On February 3, 2004, Oriana made a request to AOS for certain public records pursuant to R.C. 149.43. For the most part, the requested public records related to the performance audit completed and released on November 25, 2003. Oriana requested the following:
These public records include the following documents whether generated or received by anyone who participated officially or unofficially either in the conduct of this performance audit, or in any review or approval of audit matters, including but not limited to yourself, Mate Rogonjic, Jeffrey A. Castle, Alexander Heckman, Jennifer Wilson, Sam Long, John Michels, Wayne Sanford, James T. Manken, John O'nan, Craig Mayton, Michael J. Ruffin, John Tanzi, David Varda, and Betty Montgomery, and relating in any manner whatsoever to Oriana House, Inc., Correctional Health Services, Inc., Oriana Services, Inc., Mr. James J. Lawrence, or any employee of the above companies:
1. Any and all correspondence including deleted and undeleted e-mails, records and contents of facsimile transmissions, personal files and handwritten notes;
2. Any and all correspondence including deleted and undeleted e-mails, records and contents of facsimile transmissions, personal files and handwritten notes to or from any political party or any political committee or any of the officials, employees, agents, lobbyists, representatives, advisors or consultants of the foregoing;
3. All office telephone call records calls including cell phone call records;
4. All formal and informal audit documentation including audit programs, analyses and schedules prepared, memoranda, letters of confirmation and representation, abstracts of company documents, and schedules or commentaries prepared, procedures applied, tests performed, information obtained, and pertinent conclusions reached, as well as all records inconsistent with conclusions or which would otherwise challenge the conclusions of the audit report;
5. All interview notes and a copy of all tape-recorded interviews;
6. All calendar entries; and
7. All requests from any entity or individual for any audit or review including but not limited to requests for the performance audit, and any other type of audit, and responses thereto including supporting work papers;
except that this request does not include any of the following:
a. Records provided to the Auditor of State from Oriana House, Inc. or any of its employees or its legal counsel; and
b. Correspondence or communication to or from Oriana House, Inc. or any of its employees or its legal counsel.
If any requested documents are in the custody, possession or control of a third party or parties, please identify in your response to this request the name and address of the third party or parties and the records that they possess. If you withhold any record because of privilege or because of some other lawful reason, please identify (a) the date of the record; (b) the number of pages; and (c) the reason for withholding it.
 {¶ 28} 16. With respect to this particular records request, Oriana was represented by the law firm of Benesch, Friedlander, Coplan and Aronoff, LLP ("Benesch").
 {¶ 29} 17. After much discussion and correspondence with counsel for Oriana, AOS made available for inspection approximately 14,000 pages of records. Of those records, counsel for Oriana requested and received 6,035 copies. Some of those copies were provided prior to the filing of the instant mandamus action and others were provided after the filing.
 {¶ 30} 18. Of the pages requested and/or copied, AOS either partially redacted or withheld the following documents which have been submitted to the magistrate for an in camera review:
a) A total of 31 lines of 43 pages in the performance work papers and in other records were redacted because of information related to the special audit which is ongoing. Respondent Auditor takes the position that the information related to an ongoing audit is not public record until the audit is complete by operation of law, Revised Code Section 117.26. These records were provided to Relator, as redacted. [In Camera Exhibit 31(a)]
b) A total of 41 pages related to the special audit were withheld in their entirety. Respondent Auditor takes the position that the information related to an ongoing audit is not public record until the audit is complete by operation of law, Revised Code Section 117.26. [InCamera Exhibit 31(b)]
c) A total of 14 lines on 6 pages located in the Legal correspondence files in the work papers were redacted.
Respondent takes the position that these documents were redacted as privileged attorney-client advice and/or as attorney work product. The attorneys are Craig R. Mayton, Chief Legal Counsel, Auditor of State, and Pamela J. Vest, Deputy Chief Legal Counsel, Auditor of State. Both are licensed to practice law in the state of Ohio. The recipients of these communications include the Auditor of State, her auditors and staff. These records were provided to Relator, as redacted. [In Camera Exhibit 31(c)]
d) A total of 8 pages located in the Legal correspondence files in the work papers were withheld. Respondent asserts privileged attorney-client advice and/or as attorney work product. The attorneys are Craig R. Mayton, Chief Legal Counsel, Auditor of State, and Pamela J. Vest, Deputy Chief Legal Counsel, Auditor of State. Both are licensed to practice law in the state of Ohio. The recipients of these communications include the Auditor of State, her auditors and staff. [In Camera Exhibit 31(d)]
e) A total of seven lines on 10 pages were withheld. Respondent takes the position that these documents related to investigatory techniques or procedures and were redacted pursuant to Revised Code Section149.43(A)(2)(c) which exempts from public disclosure records that information that would expose the confidentiality of specific confidential investigatory techniques or procedures pertaining to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature. [In Camera Exhibit 31(e)]
Counsel for Relator does not stipulate to the explanations or rationale for non-disclosure offered by Respondent.
32. Respondent Auditor of State also did not provide copies of the following documents for the reasons stated:
a) A total of 75 calendar records were redacted. Respondent asserts these items reflected personal business or other work meetings not related to the performance audit, Oriana House, or were not otherwise responsive [to] the public record request. These records were provided to Relator, as redacted. [In Camera Exhibit 32(a)]
b) An additional 20 pages of calendar records were withheld because of references to the ongoing special audit. Those working on the special audit are: Deb Hackathorn, David Varda, Doug Lumpkin, Cynthia Callendar, Kevin Saionzkowski, Jim Manken, and John O'Nan. Respondent asserts that any meetings or notes of those working on special audit are withheld because the audit is still ongoing and the work papers are protected under R.C. § 117.26. [In Camera Exhibit 32(b)]
c) A total of 36 pages located in the files of Craig Mayton, Chief Legal Counsel, Auditor of State, and Pamela J. Vest, Deputy Chief Legal Counsel, Auditor of State were withheld. Respondent claims attorney-client privileged communications to the Auditor of State and/or her auditors or staff. [In Camera Exhibit 32(c)(d)]
d) A total of 202 pages were withheld. Respondent claims attorney work product located in the files of Craig Mayton, Chief Legal Counsel, Auditor of State and Pamela J. Vest, Deputy Chief Legal Counsel, Auditor of State. [In Camera Exhibit 32(c)(d)]
33. Counsel for Relator does not stipulate to the explanations or rationale for non-disclosure offered by Respondent. * * *
 {¶ 31} 19. On March 19, 2004, Oriana, through the law firm of Benesch, made another request for certain public records from AOS pursuant to R.C. 149.43. Oriana requested the following documents:
These public records include the following documents whether generated or received by you or any of your employees, agents, lobbyists, representatives, advisors or consultants during the period January 1, 2003 to the present either to or from Alex Arshinkoff, the Summit County Republican Party, or any of their employees, board members, representatives, lobbyists, agents or consultants relating in any manner whatsoever to community-based correctional facilities, judicial corrections boards, Oriana House, Inc., Correctional Health Services, Inc., Oriana Services, Inc., Mr. James J. Lawrence, or any employee of the above companies.
1. Any and all correspondence including deleted and undeleted e-mails, records and contents of facsimile transmissions, personal files and handwritten notes;
2. All office telephone call records including cell phone call records; and
3. All calendar entries.
If any requested documents are in the custody, possession or control of a third party or parties, please identify in your response to this request the name and address of the third party or parties and the document(s) that they possess. If you withhold any record because of privilege or because of some other lawful reason, please identify (a) the date of the record; (b) the number of pages; and (c) the reason for withholding it.
 {¶ 32} 20. By letter dated April 9, 2004, AOS acknowledged receipt of Oriana's March 19, 2004 public record request and responded as follows:
Unfortunately, your request is not a legally appropriate public records request in that it fails to specifically and particularly describe the records you seek. Rather, it is a request for information, and a public office has no duty under the public records law to seek out and retrieve public records containing selected information of interest to a requester. Nevertheless, please feel free to submit a proper request for records in light of this correspondence. This office is dedicated to compliance with the public records law, and will make every attempt to respond satisfactorily to a proper request for public records.
 {¶ 33} 21. By letter dated August 10, 2004, counsel for Oriana offered to revise the March 19, 2004 public records request to limit the request only to specified individuals and entities.
 {¶ 34} 22. By letter dated August 23, 2004, AOS produced additional documents.
 {¶ 35} 23. By letter dated February 26, 2004, Oriana, through other legal counsel, the Law Firm of Teamor Associates ("Teamor Assoc.") and Cheryl Mackey Bayard, made another request for records pursuant to R.C. 149.43. Specifically, Oriana requested the following:
These public records include the following documents whether generated or received by you or any of your employees, agents, lobbyists, representatives, advisors or consultants during the period January 1, 2000 to present to or from Judge Brenda Burnham Unruh, Judge John Adams, Alex Arshinkoff, or Joe Masich, and relating in any manner whatsoever to Oriana House, Inc., Correctional Health Services, Inc., Oriana Services, Inc., Mr. James J. Lawrence, or any employee of the above companies:
1. Any and all correspondence including deleted and undeleted e-mails, records and contents of facsimile transmissions, personal files and handwritten notes;
2. Any and all correspondence including deleted and undeleted e-mails, records and contents of facsimile transmissions, personal files and handwritten notes to or from any political party or any political committee or any of the employees, agents, lobbyists, representatives, advisors or consultants of Judge Brenda Burnham Unruh, Judge John Adams, Alex Arshinkoff, or Joe Masich;
3. All office telephone call records including cell phone call records; and
4. All calendar entries.
If any requested records are in the custody, possession or control of a third party or parties, please identify in your response to this request the name and address of the third party or parties and the document(s) that they possess. If any requested records are in the custody, possession or control of a third party or parties, please identify in your response to this request the name and address of the third party or parties and the records that they possess. If you withhold any record because of privilege or because of some other lawful reason, please identify (a) the date of the record; (b) the number of pages; and (c) the reason for withholding it.
 {¶ 36} 24. By letter dated March 2, 2004, AOS acknowledged receipt of the February 26, 2004 request and indicated as follows:
Unfortunately, your request is not a legally appropriate public records request in that it fails to specifically and particularly describe the records you seek. Rather, it is a request for information, and a public office has no duty under the public records law to seek out and retrieve public records containing selected information of interest to a requester. Nevertheless, please feel free to submit a proper request for records in light of this correspondence. This office is dedicated to compliance with the public records law, and will make every attempt to respond satisfactorily to a proper request for public records.
 {¶ 37} 25. By letter dated May 12, 2004, AOS sent a letter to counsel for Oriana, Ms. Bayard, inviting her to examine the same materials inspected by Oriana's other counsel concerning the performance audit work papers and other related materials.
 {¶ 38} 26. As a result of further discussions, counsel for Oriana, specifically Teamor Assoc., has not contacted AOS further to inspect the materials which were examined by Oriana's other counsel Benesch.
 {¶ 39} 27. On March 31, 2004, AOS submitted a public records request to counsel for Oriana seeking various records and documents, including personnel files, transaction records, travel reports, and charts of accounts related to the Summit and Seneca County CBCFs. Specifically, AOS requested copies of the following records: (1) personnel files for specified employees, acknowledging the propriety of redactions for information required to be kept confidential by state or federal law; (2) all receipts, disbursements, and adjustment transactions between specified persons and entities; (3) a complete chart of accounts; (4) travel and reimbursement reports for specified individuals; and (5) supporting documentation for specified transactions, including invoices, vouchers, purchase orders, contracts, etc.
 {¶ 40} 28. On April 13, 2004, AOS sent additional correspondence to counsel for Oriana requesting that the personnel file portion of the March 31, 2004 request be expanded to include contract employees and that the travel records portion of the request be expanded to include state employees.
 {¶ 41} 29. By letter dated May 24, 2002, counsel for Oriana denied the public records request of AOS as follows:
This letter is to respond to your letter March 31, 2004, as amended by your letter April 13, 2004, seeking public records from Oriana House, Inc. Your letter indicated, "we are making a form public records request pursuant to Ohio Revised Code Section 149.43 for copies of public records from Oriana House, specifically for public records related to the Summit County Community Based Correctional Facility and the Seneca County Community Based Correctional Facility."
Your Letter was addressed to me. Please be advised that I am not the custodian of records for Oriana House, Inc. Also, please be advised that Oriana House, Inc. is not a public office, as defined by R.C. 149.43(A) nor is it a state, county, city, village, township, or school district unit. As such, this letter is [to] notify you that Oriana House is not required to produce records or otherwise respond to your letter.
 {¶ 42} 30. Oriana has not produced any documents in response to AOS's March 31, 2004 public records request.
 {¶ 43} 31. By letter dated March 31, 2004, AOS also made a public records request to ADP, seeking copies of personnel files for specific employees of Oriana. The reason for this request is that Oriana has engaged ADP to prepare the payroll for its employees and the employees of its subsidiaries.
 {¶ 44} 32. By letter dated April 15, 2004, ADP denied the request of AOS as follows:
This letter is sent in response to the Public Records Request ("Request") sent to ADP, Inc.'s ("ADP") Roseland, New Jersey office.
I have reviewed Ohio Revised Code Section 149.43 (Ohio's Public Records Act) in addition to the case laws you sent to me. ADP is a private corporation and not a public office as described in § 149.43. It is ADP's understanding that Oriana House Inc. is not a public office but a private, non-profit organization. Further, ADP is not a "Records Custodian" for its payroll data processing clients. As such, it is ADP's position that we are not required to produce documents under the Request. Notwithstanding our position, please be advised that ADP does not possess "copies of personnel files" for James J. Lawrence, Anne Connell-Freund or the individuals identified in Exhibit B of the Request. ADP is a payroll data processing company and maintains payroll information pertaining to its clients' employees for a limited period of time.
As I am sure you are aware, ADP was issued a Subpoena Duces Tecum by Chief Auditor Kevin M. Saionzkowski dated November 6, 2003 seeking similar documents asked for in your Request. Oriana House filed a Motion to Quash the Subpoena dated November 26, 2003. ADP is currently awaiting a decision by Judge Miller with respect to the Subpoena and ADP's document production.
 {¶ 45} 33. On May 7, 2004, Oriana, through Benesch, filed a verified complaint for a writ of mandamus in case number 04APD-05-492 seeking a writ of mandamus to compel AOS to produce the documents requested in the February 3 and March 19, 2004 public records requests. Oriana also seeks an award of attorney fees.
 {¶ 46} 34. On May 11, 2004, Oriana, through Teamor and Assoc., filed a second verified complaint for a writ of mandamus in case number 04APD-05-504 with regard to the February 26, 2004 public records request contending that the documents AOS produced earlier in response to the performance audit are not responsive to Oriana's February 26, 2004 request. Oriana seeks an award of attorney fees in this action as well.
 {¶ 47} 35. On June 4, 2004, AOS answered the respective claims of Oriana and filed a counter-claim seeking to compel Oriana and ADP to produce the documents which AOS sought through its March 31, 2004 public records request.
 {¶ 48} 36. This court consolidated the two cases.
 {¶ 49} 37. Several status conferences were held, and a briefing schedule was issued. At this time, the parties have filed a joint stipulation as well as individual packages of evidence pertaining to their respective issues.
 {¶ 50} 38. Following this court's September 9, 2004 decision wherein this court found that AOS had the authority under R.C. Chapter 117 to conduct a special audit of Oriana and to subpoena both Oriana and ADP for records, the trial court ordered ADP to turn over to AOS the documents relative to AOS's request. Those documents have been provided to AOS at this time.
 {¶ 51} 39. On Thursday, December 2, 2004, a telephone conference was held because the magistrate had some questions regarding some of the in camera exhibits. The parties agreed that the magistrate would submit the questions to counsel for AOS, in writing, and that written responses would be provided. The questions and responses have been made a part of the in camera exhibits for the court's review.
 {¶ 52} 40. Based upon the magistrate's original review of the in camera documents, three documents were noticed by the magistrate as potentially having been documents which were inadvertently redacted from the documents presented to Oriana. Preceding oral argument on the matter, counsel for AOS provided counsel for Oriana with those documents.
 {¶ 53} 41. Following oral argument, this matter has been submitted to the magistrate for decision.
Conclusions of Law:
 {¶ 54} Oriana seeks to compel AOS to produce documents relative to its public records requests and to compel AOS to justify the redactions. It is undisputed that AOS is an executive office of the state of Ohio created pursuant to Section I, Article III, Ohio Constitution and that AOS is a "public office" as defined by R.C. 149.011(A). As such, AOS is subject to the Ohio Public Records Act.
 {¶ 55} Mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act, R.C. 149.43. State ex rel. Steckman v.Jackson (1994), 70 Ohio St.3d 420, 426-427; State ex rel. GannettSatellite Info. Network v. Shirey (1997), 78 Ohio St.3d 400, 401; Stateex rel. Cincinnati Enquirer v. Hamilton Cty. (1996), 75 Ohio St.3d 374. Furthermore, anyone seeking public records under R.C. 149.43 is not required to establish the lack of an adequate remedy at law in order to be entitled to a writ of mandamus. State ex rel. McGowan v. CuyahogaMetro. Hous. Auth. (1997), 78 Ohio St.3d 518.
 {¶ 56} The terms "record" and "public record" are defined in R.C.149.011 and 149.43 as follows:
[149.011] (G) "Records" includes any document, device, or item, regardless of physical form or characteristic, including an electronic record as defined in section 1306.01 of the Revised Code, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office.
[149.43(A)] (1) "Public record" means records kept by any public office, including, but not limited to * * * county * * * units * * *.
 {¶ 57} It is well-settled that Ohio's Public Records Act, R.C. 149.43, is to be construed liberally to facilitate broad access to public records, exceptions are to be strictly interpreted, and any doubt as to the applicability of an exception is to be resolved in favor of disclosure. State ex rel. Thomas v. Ohio State Univ. (1994),71 Ohio St.3d 245, 247; State ex rel. Cincinnati Enquirer v. Krings
(2001), 93 Ohio St.3d 654. The burden of proving that a record is exempt from disclosure is upon the governmental agency asserting the exception.State ex rel. James v. Ohio State Univ. (1994), 70 Ohio St.3d 168, 169.
 {¶ 58} Pursuant to the requests for public records, AOS provided Oriana with access to over 14,000 documents. Counsel for Oriana requested and received over 6,000 copies and, of the 6,000 plus pages of records copied, AOS partially redacted certain portions of those records under one of four exceptions. AOS has also withheld certain other documents in their entirety claiming that the documents are exempt from disclosure. The redacted and withheld documents have been submitted to the court for an in camera inspection.
 {¶ 59} Four exceptions are relevant to the within matter: R.C.149.43(A)(1)(v) exempts "Records the release of which is prohibited by state or federal law" and pertains to attorney-client privilege and work product of an ongoing audit under R.C. 117.26; R.C. 149.43(A)(1)(h) and (2)(c) pertain to confidential law enforcement investigatory records; and, last, that certain redactions were made because the material was nonresponsive to the requests.
 {¶ 60} R.C. 149.43 does not include a clear exception from disclosure for documents which are arguably covered by an attorney-client privilege; however, R.C. 149.43 includes an exclusion for a "[t]rial preparation records" which the magistrate finds helpful. R.C.149.43(A)(g)(4) defines a "[t]rial preparation record" as follows:
* * * [A]ny record that contains information that is specifically compiled in reasonable anticipation of, or in defense of, a civil or criminal action or proceeding, including the independent thought processes and personal trial preparation of an attorney.
Furthermore, such documents would be covered by R.C. 149.43(A)(1)(v).
 {¶ 61} R.C. 149.43(A)(1)(v) generally exempts records, the release of which is prohibited by state or federal law. The common law attorney-client privilege constitutes a state law for purposes of the Ohio Public Records Act. In Thomas, the court noted that "[r]ecords of communications between attorneys and their state-government clients pertaining to the attorneys' legal advice are excepted from disclosure under R.C. 149.43(A)(1), since the release of these records is prohibited by state law." Id. at 249. The court then went on to note that, pursuant to R.C. 3345.15, the Attorney General is the attorney for each state university and shall provide legal advice in all matters relating to its powers and duties. As such, it is clear that, the attorney-client privilege exists between AOS and attorneys specifically employed by the office of the Attorney General. However, in the present case, the issue is whether the attorney-client privilege exists between AOS and the attorneys employed by AOS.
 {¶ 62} In State ex rel. Olander v. French (July 16, 1996), Franklin App. No. 96APD04-501, this court held that the attorney-client privilege does not exist between members of a given state agency or department except the office of the Attorney General. While the Ohio Supreme Court affirmed this court's decision in Olander, it did so without addressing the issue of privilege between state agencies and their in-house counsel as that issue was not before the court. State ex rel. Olander v. French
(1997), 79 Ohio St.3d 176. As such, because this court's decision inOlander has not been overruled, the magistrate finds that, to the extent AOS claims that certain documents were exempt from disclosure pursuant to the attorney-client privilege, where the attorney involved was a member of in-house counsel, this magistrate finds that the privilege does not attach and those documents are subject to disclosure. See, also, this court's decision in State ex rel. Leslie v. Ohio Housing Finance Agency,
Franklin App. No. 02AP-1147, 2003-Ohio-6560, currently pending before the Ohio Supreme Court.
 {¶ 63} AOS also claims that certain records are exempt from disclosure under R.C. 149.43 because they encompass work product of the ongoing special audit of Oriana. Oriana concedes that, if, in fact, certain documents constitute work papers subject to the ongoing special audit, such documents are excepted from disclosure pursuant to R.C. 117.26 and149.43(A)(1)(v). However, Oriana urges this court to find that the exemption would apply only to the audit report itself and does not prevent disclosure of documents merely relating to the ongoing special audit.
 {¶ 64} R.C. 117.26 provides as follows:
Certified copies of completed audit reports shall be filed in the office of the clerk of the legislative authority, clerk of the governing body, executive officer of the governing body, and chief fiscal officer of the audited public office. Except as otherwise provided in sections117.14 and 117.15 of the Revised Code, an audit report is not a public record under section 149.43 of the Revised Code until copies of the report are filed with the officers enumerated in this section.
 {¶ 65} Supplementing R.C. 117.26 is Ohio Adm. Code 1171-01, which is the definition statute. The term "audit" is defined therein as follows:
(A) "Audit" means an examination of financial statements, books, documents, records, and other evidence relating to the obligation, receipt, expenditure, or use of public money. An audit includes, but is not limited to, a special audit, financial audit, compliance audit, fraud and embezzlement audit, reviews of governmental operations, the performance of agreed-upon procedures, or any part or combination thereof.
 {¶ 66} In Oriana House, this court specifically found that AOS has the authority to conduct a special audit of Oriana under R.C. 117.11(B), and noted that a special audit is simply a version of a financial audit undertaken at the auditor's own initiative. Furthermore, as the facts indicate, while AOS was conducting its performance audit of Oriana (which was completed and released November 25, 2003), AOS began conducting a special audit of Oriana. In footnote 6 of Oriana House, this court explained the difference between a "performance audit" and a "special audit" as follows:
In a letter dated February 21, 2003, to Summit County Court of Common Pleas Judge Mary Spicer, Montgomery alluded to the difference between a performance audit and a special audit. Performance audits are less stringent and are essentially instituted to measure governmentalefficiency. Special audits are necessary to examine financial documents to address allegations of fraud, theft, and misappropriation of money.
(Emphasis sic.)
 {¶ 67} As stated previously, Oriana concedes that, to the extent the documents constitute work papers subject to the on-going special audit, the documents are excepted from disclosure pursuant to R.C. 117.26 and149.43(A)(1)(v). However, relator contends that only those documents which are part of the audit report itself would be exempt from disclosure. Relator argues that documents relating to or referring to the ongoing special audit are not exempt.
 {¶ 68} In determining this issue, the magistrate finds it helpful to examine certain cases which have defined the term "work product" for purposes of R.C. 149.43(A)(2)(c) which provides for the exception of confidential law enforcement investigatory records which include specific investigatory work product. The term "work product" is otherwise undefined in this context. In Steckman, at 434, the court noted as follows:
* * * [I]t becomes necessary to determine the question: "What is work product?" R.C. 149.43 does not define the term. The Rules of Criminal Procedure do not define the term. What then is the origin of the term?
The term "work product" emanates from the decision of the United States Supreme Court in Hickman v. Taylor (1947), 329 U.S. 495, 67 S.Ct. 385,91 L.Ed. 451. The term has, most generally, arisen in the context of the relationship of attorney-client. The court indicated that proper preparation of a client's case requires that information be gathered, assembled and sorted and that theories of the case be prepared and strategy be planned "without undue and needless interference." Id. at 511, 67 S.Ct. at 393, 91 L.Ed. at 462. If the product of such work is to be available merely upon demand, then there is a very real probability that certain information will remain unrecorded, witnesses' names will not be catalogued and other memoranda will be absent from the "official" files. We should not, by our rulings, create a situation where there is an incentive to engage in such conduct.
We are now faced with the problem of the "work product" concept being transferred, by the General Assembly, from its attorney-client genesis to the area of confidential law enforcement investigatory records. Given this task, with regard to records assembled by law enforcement officials (including prosecutors), we now subscribe to Black's definition of "work product rule." "Under this rule any notes, working papers, memoranda or similar materials, prepared by attorneys * * * in anticipation of litigation, are protected from discovery." Black's Law Dictionary (6 Ed.Rev. 1990) 1606. This definition (working papers) is broad enough to bring under its umbrella any records compiled by law enforcement officials.
 {¶ 69} Furthermore, in State ex rel. WHIO-TV-7 v. Lowe (1997),77 Ohio St.3d 350, 355, the court considered whether or not documents which were subject to discovery under the criminal rules, and which ordinarily would not be considered to be work product or trial preparation materials, are precluded from release to the public pursuant to the public records doctrine. The court noted as follows:
* * * [T]he purpose of Ohio's Public Records Act, R.C. 149.43, is to expose government activity to public scrutiny, which is absolutely essential to the proper working of a democracy. White v. Clinton Cty.Bd. of Commrs. (1996), 76 Ohio St.3d 416, 420 * * *. However, there are certain governmental activities that would be "totally frustrated if conducted openly." Press-Enterprise Co. v. California Superior Court
(1986), 478 U.S. 1, 8-9 * * *.
 {¶ 70} In that case, the court held that criminal discovery is one of the governmental activities that would be frustrated if subjected to the required closure contemplated by R.C. 149.43.
 {¶ 71} In the present case, Oriana argues that notations referring to the ongoing special audit are subject to disclosure under R.C. 149.43. AOS argues that, to the extent the references would tend to inform Oriana of the areas of concern AOS was exploring in its special audit to determine whether or not improper activities had taken place, those references should not be disclosed since they would give Oriana the opportunity to conceal evidence and potentially thwart further investigation. This magistrate finds that, to the extent the notations indicate an area AOS was exploring relative to the special audit, the disclosure of that evidence would frustrate the governmental activity of AOS and other investigating agencies where it is suspected that fraud or other illegal activities are occurring.
 {¶ 72} AOS also asserts that some of the records are exempt from disclosure under R.C. 149.43 by virtue of R.C. 149.43(A)(1)(h) and (2)(c) which provide as follows:
[(A)(1)] (h) Confidential law enforcement investigatory records;
* * *
(2) "Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:
* * *
(c) Specific confidential investigatory techniques or procedures or specific investigatory work product[.]
 {¶ 73} In State ex rel. Polovischak v. Mayfield (1990),50 Ohio St.3d 51, 52, the Ohio Supreme Court stated that courts employ a two-step test to determine whether a record is exempt as a confidential law enforcement record under R.C. 149.43:
* * * First, is the record a confidential law enforcement record? Second, would release of the record "create a high probability of disclosure" of any one of four kinds of information specified in R.C.149.43(A)(2)? * * *
See, also, State ex rel. Yant v. Conrad (1996), 74 Ohio St.3d 681, 684.
 {¶ 74} With respect to the first prong of the analysis, a document is considered a confidential law enforcement record when it (1) relates to a law enforcement matter of a criminal, quasi-criminal, civil or administrative nature; (2) is directed to specific misconduct as opposed to routine monitoring; and (3) is completed as part of an investigation of violations of state law or administrative rules.
 {¶ 75} The record indicates that, while conducting a performance of Oriana, AOS began a special audit as well. As stated previously, special audits are necessary to examine financial documents to address allegations of fraud, theft, and misappropriation of money. Pursuant to R.C. Chapter 117, either or both a civil action and/or a criminal action can be instituted where an audit report sets forth that any public money has been illegally expended, not accounted for, due and not collected, converted or misappropriated, or where an audit report sets forth any malfeasance or gross neglect of duty on the part of any public official for which a criminal penalty is provided. Specifically, R.C. 117.28
provides as follows:
Where an audit report sets forth that any public money has been illegally expended, or that any public money collected has not been accounted for, or that any public money due has not been collected, or that any public property has been converted or misappropriated, the officer receiving the certified copy of the report * * * may * * * institute civil action in the proper court in the name of the public office to which the public money is due or the public property belongs for the recovery of the money or property and prosecute the action to final determination.
The auditor of state shall notify the attorney general in writing of every audit report which sets forth that any public money has been illegally expended, or that any public money collected has not been accounted for, or that any public money due has not been collected, or that any public property has been converted or misappropriated and of the date that the report was filed.
R.C. 117.29 further provides as follows:
Where an audit report sets forth any malfeasance or gross neglect of duty on the part of any public official for which a criminal penalty is provided, a certified copy of the report shall be filed with the prosecuting attorney of the county in which the offense is committed, and the prosecuting attorney shall * * * institute criminal proceedings against the public official.
 {¶ 76} Applying R.C. 149.43(A)(1)(h) and (2)(c), as well as referencing this court's prior decision in Oriana House, upholding the right of AOS to subpoena Oriana and other third parties, the magistrate finds that the special audit currently being conducted by AOS clearly qualifies as both a "law enforcement matter of a * * * civil, or administrative nature" and a "law enforcement matter of a criminal [or] quasi-criminal" matter. Furthermore, although Oriana argues that AOS must be the actual law enforcement agency, for purposes of R.C. 117.29, which provides for the filing of criminal proceedings by the prosecuting attorney, the magistrate disagrees. In order for an action under R.C.117.29 to proceed in a trial court against Oriana and prosecuted by the prosecuting attorney, AOS would be the agency responsible for collecting, evaluating, and examining the relevant documents which would ultimately lead to the prosecution of any offenses. As such, the magistrate finds that the first prong of the analysis is met to the extent that AOS demonstrates that the redacted documents relate to law enforcement matters of a criminal, quasi-criminal, civil or administrative nature. Furthermore, upon an in camera review of those documents, the magistrate specifically finds that they do.
 {¶ 77} Second, the magistrate finds that the redacted portions are directed to specific misconduct and are not simply part of routine monitoring. While it is true that some of the information currently being withheld from Oriana was originally discovered during the course of the performance audit, which would be considered "routine monitoring," upon the discovery of that information, AOS began conducting the special audit of Oriana. In fact, the record is clear that the special audit of Oriana began before the performance audit was completed and released in November 2003. Based upon those facts, the magistrate finds that the redacted portions are directed to specific misconduct as opposed to routine monitoring.
 {¶ 78} Lastly, the magistrate finds that the information and the documents have been prepared as part of an investigation of violations of state law or administrative rules. As stated in this court's decision inOriana House, AOS is investigating the alleged misuse of funds. Specifically, AOS is examining transactions between Oriana, CHS, Oriana Services, Inc., and James Lawrence to determine whether the grant funds were used in accordance with the terms of the grant agreement. The magistrate finds that this investigation concerns violations of state law and/or administrative rules.
 {¶ 79} Furthermore, the magistrate notes that R.C. 149.43(A)(2)(c) provides that records are exempt from disclosure if they meet the above enumerated three-point test and constitute a specific confidential investigatory technique or procedures or constitute specific investigatory work product. The magistrate finds that, after considering the definition of "work product" within the public records arena, the documents which AOS maintains are exempt under this exemption do constitute specific investigatory work product. As such, the magistrate finds that those documents are exempt from disclosure under the public records act.
 {¶ 80} The last category of documents which AOS claims are exempt from release are documents which AOS maintains are nonresponsive to Oriana's request. AOS does not argue that this category of redactions do not constitute "public records"; instead, AOS argues that the items under this category which AOS redacted are simply nonresponsive to Oriana's public records request.
 {¶ 81} Oriana points out that R.C. 149.011(G) broadly defines a "public record" to include "any document, device, or item, regardless of physical form or characteristic, created or received by or coming under the jurisdiction of any public office of the state or its political subdivisions, which serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office."
 {¶ 82} Furthermore, R.C. 149.43(B) provides, in pertinent part, as follows:
(1) * * * [A]ll public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours. * * *
(2) If any person chooses to obtain a copy of a public record in accordance with division (B)(1) * * *, the public office or person responsible for the public record shall permit that person to choose to have the public record duplicated * * *. When the person seeking the copy makes a choice under this division, the public office or person responsible for the public record shall provide a copy of it in accordance with the choice made by the person seeking the copy.
(3) Upon a request made in accordance with division (B)(1) of this section, a public office or person responsible for public records shall transmit a copy of a public record to any person by United States mail within a reasonable period of time after receiving the request for the copy. * * *
 {¶ 83} Oriana concedes that, to the extent that information redacted from the documents produced was nonresponsive to Oriana's request, then that information was properly redacted as it is exempt from disclosure. Counsel for Oriana concedes that the magistrate and the court simply need to examine those records and determine whether or not the redacted materials were truly nonresponsive. Within the in camera documents, AOS provided redacted as well as unredacted copies of all the documents. With regard to the sections claimed to be nonresponsive, the magistrate finds that most of the redacted entries truly were nonresponsive to Oriana's request as they did not relate to Oriana, CHS, Oriana Services, Inc., or Lawrence, the performance audit or the special audit in any way.
 {¶ 84} Oriana further contends that AOS has refused to produce any documents relative to Oriana's March 19, 2004 public records request. However, Oriana also concedes that AOS did provide copies of certain documents (attached at Tab 4 of relator's exhibit G), which are, arguably, within the scope of the March 19, 2004 request. However, Oriana doubts the veracity of AOS's original denial based upon AOS's assertion that the March 19, 2004 request was not legally appropriate given that the request failed to particularly and specifically describe the documents sought. Relator challenges the truthfulness of the second affidavit of Lisa Wu Fate attached to AOS's October 25, 2004 motion for leave to supplement the record asserting that, notwithstanding the broad nature of Oriana's request, she made a good-faith effort to locate any documents which may have been responsive. Oriana seeks the opportunity to depose Ms. Fate and others to challenge their assertions. The magistrate denied this motion previously and to the extent Oriana raises this motion anew, it is again denied. The magistrate finds that the depositions Oriana seeks are not necessary to determine the within matters as further explained hereinafter.
 {¶ 85} Oriana's March 19, 2004 record request sought the following:
These public records include the following documents whether generated or received by you or any of your employees, agents, lobbyists, representatives, advisors or consultants during the period January 1, 2003 to the present either to or from Alex Arshinkoff, the Summit County Republican Party, or any of their employees, board members, representatives, lobbyists, agents or consultants relating in any manner whatsoever to community-based correctional facilities, judicial corrections boards, Oriana House, Inc., Correctional Health Services, Inc., Oriana Services, Inc., Mr. James J. Lawrence, or any employee of the above companies.
1. Any and all correspondence including deleted and undeleted e-mails, records and contents of facsimile transmissions, personal files and handwritten notes;
2. All office telephone call records including cell phone call records; and
3. All calendar entries.
If any requested documents are in the custody, possession or control of a third party or parties, please identify in your response to this request the name and address of the third party or parties and the document(s) that they possess. If you withhold any record because of privilege or because of some other lawful reason, please identify (a) the date of the record; (b) the number of pages; and (c) the reason for withholding it.
 {¶ 86} In its response to Oriana's March 19, 2004 records request, AOS indicated that the request was not legally appropriate because it failed to specifically and particularly describe the records sought. Specifically, within the context of this mandamus action, AOS has indicated that it is unable to identify the "employees, board members, representatives, lobbyists, agents or consultants * * * of the Summit County Republican Party." Furthermore, AOS indicated that it did not have any documents either addressed to or from Alex Arshinkoff or the Summit County Republican Party. AOS contends that it simply was not able to specifically seek out documents which would be responsive to this request.
 {¶ 87} In Ohio, public records are considered to be the people's records and the officials in whose custody those records are kept are merely trustees for the people. As such, anyone may inspect these records at any reasonable time, subject only to the limitation that such inspection does not endanger the safety of the record, or unreasonably interfere with the discharge of the duties of the officer having custody of those records. State ex rel. The Warren Newspapers, Inc. v. Hutson
(1994), 70 Ohio St.3d 619.
 {¶ 88} Furthermore, the officer in whose custody the records are kept may not assert that it is too expensive, or that it takes too long, or that it interferes too much with normal duties, to evade the public's right to inspect and obtain a copy of public records within a reasonable time. Public offices are under a statutory duty to organize an employee staff in such a way that the office will be able to make these records available for inspection. Id. at 623. State ex rel. Fox v. Cuyahoga Cty.Hosp. System (1988), 39 Ohio St.3d 108.
 {¶ 89} Oriana is correct to assert that there is no specific form which a public records request must take. However, while it is reasonable to expect that a public office such as AOS would organize its records in a reasonable fashion, the fact that Oriana made what it believes to be a specific request to AOS does not necessarily mandate that AOS keeps its records in such a way that access to the records requested was possible. To the extent that Oriana's March 19, 2004 records request asks for records addressed to or from specifically Alex Arshinkoff or the Summit County Republican Party, AOS should have been able to look for documents which would have been responsive to that request. However, the magistrate agrees with the assertion by AOS that it was not required to identify for Oriana the "employees, board members, representatives, lobbyists, agents or consultants" of the Summit County Republican Party in order to search for records which may be responsive. To that extent, the magistrate agrees with the assertions by AOS that Oriana's March 19, 2004 records request was not legally appropriate as it did not specifically and with particularity identify the documents requested.
 {¶ 90} Oriana makes much of the fact that, subsequent to AOS's original denial of its March 19, 2004 records request, AOS turned over to Oriana a couple of documents which name Alex Arshinkoff in the body of the letters. Based upon the fact that AOS turned over those documents, Oriana contends that AOS should not have originally denied its request. Furthermore, Oriana contends that the magistrate and the court cannot look at the second affidavit of Ms. Fate wherein she asserts that, regardless of the fact that Oriana's request was not stated with particularity, she nevertheless made a good-faith effort to find responsive documents. With or without this evidence, the magistrate finds, and Oriana does not concede otherwise, that the documents now turned over to Oriana with Alex Arshinkoff's name in the body of the letter were actually part of the 14,000 documents originally made available to Oriana for its inspection. The fact that employees of AOS continued reviewing documents during the pendency of this mandamus action, continued to turn over documents to Oriana during the pendency of this mandamus action, and continued to correspond and work with Oriana in efforts to help recraft Oriana's March 19, 2004 records request is evidence enough regarding how these documents were discovered and that the discovery of these documents does not establish that Oriana's March 19, 2004 records request was truly a legitimate, legal request in the first instance. Instead, the magistrate finds that the records request was overly broad and did not specify with particularity the majority of the people to whom and from whom Oriana sought documents. Without considering Ms. Fate's second affidavit, the magistrate finds that AOS and Oriana continued corresponding during the pendency of this mandamus action and, when AOS discovered the documents with Alex Arshinkoff's name in them, AOS turned over those documents as being potentially responsive to Oriana's request even though Alex Arshinkoff neither sent the letters nor was he a recipient of the letters.
 {¶ 91} Similarly, Oriana filed a February 26, 2004 records request through other legal counsel, Teamor Assoc., requesting documents generated by or received by AOS and any of its employees, agents, lobbyists, representatives, advisors, or consultants during the period January 1, 2000 to present to or from Judge Brenda Burnham Unruh, Judge John Adams, Alex Arshinkoff, or Joe Masich, and relating in any manner whatsoever to Oriana, CHS, Oriana Services, Inc., Mr. James J. Lawrence, or any employee of the above companies.
 {¶ 92} AOS denied the request for the same reasons as the March 19, 2004 request was denied; that it was not legally appropriate because it failed to specifically and particularly describe the record sought. In later correspondence, AOS indicated that some documents which may be responsive to this February 26, 2004 request had originally been provided to Oriana in the 14,000 pages of documents which had previously been reviewed. To the extent that the February 26, 2004 request sought documents to or from people whom AOS could not identify, AOS has not provided any additional documents respective to this request other than what had already been turned over originally.
 {¶ 93} As with the March 19, 2004 request, the magistrate finds that public officials are not required to search for the names of unidentified people in determining whether or not there may be records which may or may not be responsive to a particular public records request. While Oriana's request is specific in that it asks for correspondence, e-mails, facsimile transmissions, personnel files, and handwritten notes, the magistrate agrees that it is not the duty of AOS to determine who "any of the employees, agents, lobbyists, representatives, advisors, or consultants of Judge Brenda Burnham Unruh, Judge John Adams, Alex Arshinkoff, or Joe Masich," actually are. As such, again without reference to the second affidavit of Ms. Fate, the magistrate finds that the February 26, 2004 records request was overly broad and did not specifically and with particularity identify the people to whom or from whom the various documents were to concern. To the extent that AOS has in its possession and did not make part of the 14,000 plus documents which have already been turned over, any documents to or from Judge Brenda Burnham Unruh, Judge John Adams, Alex Arshinkoff, or Joe Masich, AOS should be able to identify those documents and provide them to Oriana. Inasmuch as the only documents provided which are currently in the possession of the magistrate are those in camera documents, which do not include any documents which would be responsive to this request, the magistrate finds that there is no evidence that AOS has failed to provide those documents to Oriana.
 {¶ 94} Oriana has made the assertion that AOS has withheld certain other documents under certain index numbers, specifically: A2.36, A2.37, A5.23, E2.2, E2.3, E3.6, E3.7, E3.8, E3.9, and E3.10. As noted by AOS, the documents referenced under index numbers A2.36, A2.37, and A5.23 were included in the in camera exhibits for inspection. With regards to the other eight index numbers, the magistrate notes that, by letter dated August 23, 2004, AOS specifically explained the index numbering system to Oriana explaining that there were no documents stored or retained under the various "E" index categories. AOS explained that the index categories are set up prior to or early in the audit process and that no documents were retained under those categories. According to this letter, which is included in the joint stipulation under "Tab Q," AOS explained that no documents were ultimately kept under those specific index numbers but were instead placed in the miscellaneous audit papers. Counsel for AOS indicated in this letter that those papers had been provided as part of AOS's disclosure and had been reviewed by AOS. The magistrate accepts this explanation and finds that there are neither any documents to review relative to those index categories nor has AOS otherwise improperly withheld those documents from Oriana.
 {¶ 95} As stated previously, AOS has filed a counterclaim asserting that it is entitled to a writ of mandamus to compel Oriana to produce documents requested by AOS pursuant to R.C. 149.43. Throughout this mandamus action, Oriana has maintained that it is not a "public office" as such as defined in R.C. Chapter 149 and that it is not required to turn over the requested documents. AOS also seeks a writ of mandamus compelling ADP to produce documents for inspection. Inasmuch as ADP is not a party to this action, this court does not have jurisdiction over ADP and cannot grant the relief AOS seeks.
 {¶ 96} R.C. 149.011(A) defines a "public office" as follows: "includes any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government."
 {¶ 97} Oriana contends that it is a private, nonprofit Ohio corporation, governed by an independent board of directors and that it is not a "public office." However, the Ohio Supreme Court has held that an entity does not have to be operated by a public entity in order to be a public office under Ohio law. Specifically, in State ex rel. FreedomCommunications, Inc. v. Elida Community Fire Co. (1998), 82 Ohio St.3d 578, the court stated that "[a]n entity need not be operated by the state or a political subdivision thereof to be a public office under R.C. 149.011(A). The mere fact that [the entity] is a private, nonprofit corporation does not preclude it from being a public office." Id. at 579.
 {¶ 98} R.C. 149.43(C) permits a mandamus action against either the public office or the person responsible for the public record to compel compliance with the Public Records Act. The court has held that this language "manifests an intent to afford access to public records, even when a private entity is responsible for the records." State ex rel.Mazzaro v. Ferguson (1990), 49 Ohio St.3d 37, 39; State ex rel. ToledoBlade Co. v. Univ. of Toledo Found. (1992), 65 Ohio St.3d 258; Krings,
supra.
 {¶ 99} A nonprofit entity may be deemed a "public institution" and thereby a "public office" under R.C. 149.011(A) where: (1) the entity is organized for rendering services to residents of the community; (2) the entity is supported by public taxation or other public funds; and (3) the entity is performing a function that is historically a government function. Freedom Communications, Inc., supra; State ex rel. Stys v.Parma Community Gen. Hosp. (2001), 93 Ohio St.3d 438.
 {¶ 100} For the reasons that follow, the magistrate finds that Oriana is a "public institution" and therefore a "public office" for purposes of R.C. Chapter 149.
 {¶ 101} The record indicates that Summit County Ohio is the grantee of approximately $5 million of public money, under a grant from ODRC, to operate a CBCF. CBCFs are established under R.C. 2301.51 et seq. with funding approved by and provided by the ODRC. Within the grant documents, Oriana is listed as the "implementing agency." As such, by definition, Oriana is the agency which will "carry out" all of the Summit County CBCF programs. Some of the goals of the program include the following: (1) to divert 527 felony offenders from incarceration to the CBCF; (2) to provide chemical dependency treatment and/or referrals for 100 percent of all offenders in the CBCF; (3) to provide educational programming to 100 percent of the offenders; (4) to provide employment and/or vocational programming and/or vocational skills or enhancement to 100 percent of the offenders in the CBCF; (5) to provide cognitive skills programming; and (6) to provide 75 percent successful completion rate. (State's evidence at 590.) In response to the question "How will the program benefit your local criminal justice system and keep offenders out of prison?" the grant application provides as follows:
The Community Based Correctional Facility (CBCF) is an integral part of the Continuum of Sanctions currently available in the County of Summit. Residential sanctions are the most restrictive local sentencing options and the CBCF program is the most restrictive residential sanction. This sentencing option is generally used in lieu of incarceration and provides programming aimed at reducing the likelihood of future criminal behavior.
 {¶ 102} In response to the question "How does this project relate to the County's Criminal Justice Comprehensive Plan?" the grant proposal provides as follows:
This program is used for offenders who are eligible for community sanctions, but due to either the offenses or identified risk level require residential placement. The County of Summit has continued to use the Community Based Correctional Facility as one of the continuum of sanctions to ensure a variety of appropriate sentencing options are available to the Court of Common Pleas. The County currently has twenty of the twenty-two community sanctions that are currently authorized by Ohio's new sentencing law.
 {¶ 103} ODRC approves the budget for Summit County's CBCF and the budget for fiscal year 2003 totaled $5,038,167. Furthermore, the agreement between Oriana and Summit County provides, in pertinent part, as follows:
WHEREAS the COUNTY seeks to establish a program to provide an alternative program for adult offenders as a condition of probation for convicted felonious offenders; and
WHEREAS, the State of Ohio, through the Department of Rehabilitation Corrections, has authorized the granting of funds for the Community Based Correctional Facilities designed to assist in providing local corrections officials a means of retaining offenders in their own locality in lieu of incarceration in a state correction facility;
WHEREAS, by Resolution No. 2002-419 the Summit County Council has appropriated Community Based Correctional Facility funds to ORIANA for grant year 2002-2003 for the provision of such services and for the operation of such facility, as further described herein and in Exhibit A, attached to and made part of this AGREEMENT, in an amount not to exceed the sum of $5,038,167.00; NOW, THEREFORE, to continue such a local program, the parties, for good and valuable consideration set forth herein, agree as follows:
1. ORIANA and the BOARD shall establish and operate a Community Based Correctional Facility to be used by individuals convicted in the Summit County Courts of felony offenses. Such individuals shall have been placed on probation by a Judge of the Common Pleas Court and as a condition of such probation, must participate in the program for a specified term.
2. ORIANA and the BOARD shall operate the Community Based Correctional Facility in accordance with the policies, standards, and guidelines of the Ohio Department of Rehabilitation Correction.
3. ORIANA shall cooperate in operating the Community Based Correctional Facility with the Summit County Courts, the Summit County Probation Department and the Summit County Sheriff.
4. ORIANA and the BOARD shall keep adequate records as necessary to meet the reporting requirements of all regulatory state agencies, file all required reports and provide information as needed by the State, County, or the Courts. Financial records shall be kept for an audit according to reasonable accounting standards.
5. ORIANA shall provide all-risk casualty and public liability insurance in the amounts satisfactory to the COUNTY and shall name the County of Summit as an additional insured as its interests may appear.
6. ORIANA and the BOARD shall provide or cooperate in providing access to services and activities which will assist in the rehabilitation of the individual residents such as graduate equivalency services, alcohol and substance abuse treatment, mental health treatment by individual and group counseling, recreation and religious services.
 {¶ 104} Pursuant to the affidavit of Kevin Saionzkowski, Oriana receives all of the state funding granted to the Summit County CBCF to run the program and, according to Oriana's 2001 financial report, 88 percent of its total income came from public sources. Furthermore, during the performance audit, it was noted that there were potential conflicts of interest and that AOS determined that the transactions of related entities needed to be examined to determine whether or not the expenditure of public funds complies with the terms for which the public funds were received. Specifically, two loans made to CHS during 1999 and 2000 totaling approximately $6 million and the purchase of a property by CHS from Oriana under a land contract whereby Oriana leased the property back from CHS. In light of Oriana's failure to disclose the sources of funding for these and other transactions, AOS needed to examine those expenditures or transactions to determine if the public money was being used properly.
 {¶ 105} Oriana argues that, pursuant to the findings in ParmaCommunity, they are not a "public office." Oriana points out that it is operated by an independent board of directors just as the hospital in theParma Community case was and therefore, this court must find that it too is not a public office. Finding Oriana's interpretation of ParmaCommunity too narrow and because the facts in this case are vastly different, this magistrate disagrees.
 {¶ 106} In Parma Community, the hospital was constructed pursuant to a cooperative agreement between participating municipalities. Relators, who were residents, citizens, and taxpayers of the city of Parma, filed a mandamus action after their public records request had been rejected. The Ohio Supreme Court applied its holding from Fox, supra, at paragraph one of the syllabus, wherein it stated that:
A public hospital, which renders a public service to residents of a county and which is supported by public taxation, is a "public institution" and thus a "public office" pursuant to R.C. 149.011(A), making it subject to the public records disclosure requirements of R.C.149.43.
 {¶ 107} The court then went on to state the generally applied three-part test noting that, in order for Parma Community to be deemed a public institution (1) it must be a public hospital, (2) it must render a public service to residence of a county, and (3) it must be supported by public taxation. The court ultimately found that none of the three parts of the test were met.
 {¶ 108} First, the court distinguished the hospital in Parma Community from the hospitals in State ex rel. Fostoria Daily Review Co. v. Fostoria Hosp. Assn. (1988), 40 Ohio St.3d 10, and State ex rel. Dist. 1199, Health Care Social Serv. Union, SEIU, AFL-CIO v. Lawrence Cty. Gen. Hosp. (1998), 83 Ohio St.3d 351, which were owned and operated by the counties in which they were located and were never under the control of a private corporation. Furthermore, the court noted that in Fostoria, the hospital was run as a municipal institution and, after control was vested in the hospital association, the lease agreement stipulated that the land, building, and equipment would be leased to the association and that the association would utilize the facilities rent free. Because the court was able to distinguish the hospital in Parma Community from the hospitals in Fostoria, Fox, and Lawrence Cty, the court held that the first prong of the test was not met.
 {¶ 109} Thereafter, the court further concluded that the second two prongs were not met either. Unlike the lease in Fostoria, the lease agreement in the Parma Community case did not provide that the hospital must serve the public regardless of race, creed, color, or ability to pay. Furthermore, the court noted that hospital care is not always provided by government entities and has never been considered a uniquely governmental service. As such, the court found that the second prong was not satisfied either.
 {¶ 110} Lastly, the court noted that the hospital was not funded by public taxation. Although bonds were initially issued, the court noted that those bonds were issued for the cost of constructing the hospital building and that no other funds were generated to support or equip the hospital. Furthermore, the court noted that relators had not proven that the lease provision for payment of rent was insufficient to cover the fair market value of the property.
 {¶ 111} Based upon all those reasons, the court held that ParmaCommunity did not meet the statutory definition of a "public office" as codified in R.C. 149.011(A) and was not subject to the Public Records Act. Furthermore, the court specifically noted that the holding was a narrow one limited to the unique facts and circumstances of that particular case.
 {¶ 112} In the present case, Oriana is operated by a board of directors. That is true. After reviewing the evidence presented, the magistrate notes that AOS has indicated numerous concerns with the fact that the JCB had not, in any way, shape, or form, been overseeing any of the operations. It appears from several of the documents in the record that this has been a particular concern of the AOS. Further, as this court noted in its decision, James Lawrence served as the Director of the Summit County CBCF, President of Oriana House, Inc., and President of Oriana's wholly-owned subsidiary, CHS. The facts herein do not demonstrate the same "independent" board of directors as seen in ParmaCommunity.
 {¶ 113} Furthermore, the record is clear that all of the public money provided to Summit County and the JCB for the operation of the Summit County CBCF has been turned over to Oriana for purposes of implementing the agreement with ODRC to operate CBCFs in Summit County. Oriana continues to receive public money to operate, further distinguishing it from the facts in Parma Community. The record also indicates that every operation of Oriana in implementing the CBCF programs is provided by Oriana without any outside control or interference. Oriana is the holder of every document which pertains to the operation of the Summit County CBCF. If Oriana is not subject to the Public Records Act, then the public has absolutely no access to any of the records created and maintained regarding the operation of the CBCFs in Summit County.
 {¶ 114} As stated previously, the Public Records Act provides access by the public to the records of public offices. It has been determined that it is in the best interest of communities as well as the country as a whole that the public have the right to examine documents in the hands of public officials and that, where a public official does not produce those documents, the public has a right to a writ of mandamus to compel the public official to produce those documents.
 {¶ 115} In the present case, access to the documents concerning the Summit County CBCF are in the possession of one entity and one entity alone, Oriana. The magistrate specifically finds that the implementing agency, Oriana, was organized for rendering services to residents of the community. In light of the fact that Oriana receives every tax dollar appropriated for the operation of the Summit County CBCF as well as other public money, up to 88 percent of its total money, Oriana is supported by public taxation or other public funds.
 {¶ 116} Lastly, the magistrate finds that the operation of prisons is historically a governmental function. As such, this magistrate finds that there is but one conclusion to reach and that is that Oriana is a "public institution" and therefore a "public office" pursuant to R.C. Chapter 149 and is subject to the Public Records Act. As such, the magistrate recommends that this court order Oriana to turn over the documents requested by AOS.
Findings Relative to the In Camera Exhibits.
 {¶ 117} This section constitutes the magistrate's decision concerning the propriety of the redacted and withheld documents and ruling on AOS's assertions that those documents are exempt from disclosure under Ohio's Public Records Act.
 {¶ 118} In camera exhibit 31(a) is identified by AOS as follows:
A total of 31 lines on 43 pages in the performance work papers and in other records were redacted because of information related to the special audit which is ongoing. Respondent Auditor takes the position that the information related to an ongoing audit is not public record until the audit is complete by operation of law, Revised Code Section 117.26. These records were provided to Relator, as redacted. [In Camera Exhibit 31(a)]
 {¶ 119} AOS asserts that the redacted information is related to the ongoing special audit. There are five different redactions within this category. The magistrate makes the following specific determinations: (1) A2.41 — The magistrate finds that the redaction is proper as this information describes a direction of investigation relative to the special audit; (2) A2.14 — The magistrate finds that this redaction is proper as it also provides evidence of the direction that the special audit investigation was taking and identifies areas of concern; (3) A2.32 — The magistrate finds that the redaction is proper as it shows evidence relating to the direction of the special audit; (4) A2.40 — The magistrate finds this redaction is not proper as it merely references the future audit and does not provide any reference to the direction of the audit; and (5) A2.7 — The magistrate finds that the redaction is proper as it identifies a specific area of interest regarding the special audit.
 {¶ 120} In camera exhibit 31(b) is identified by AOS as follows:
A total of 41 pages related to the special audit were withheld in their entirety. Respondent Auditor takes the position that the information related to an ongoing audit is not public record until the audit is complete by operation of law, Revised Code Section 117.26. [In Camera
Exhibit 31(b)]
 {¶ 121} Within this section, AOS withheld 41 pages claiming that they were exempt from disclosure because they related to the special audit. (1) Page 54 — The magistrate finds that the information contained on this page identifies an area of concern related to the special audit and was properly withheld; (2) Page 55 — The magistrate finds that, with the exception of the side box marked "deleted," and the handwritten portions in the margin on the right-hand side, the remainder of this page does not pertain to the special audit being conducted against AOS. Instead, the substance of the comments is directed towards the JCB. As such, only the handwritten notes and the typewritten portion to the right under the word "deleted" were properly redacted, the rest of the material should be provided; (3) Page 56 — The magistrate finds that all of the material on this page relates to the direction of the special audit and was properly redacted; (4) Page 57 — The magistrate finds that this page was properly redacted in its entirety as it refers to the direction of the ongoing special audit; (5) Page 58 — The magistrate finds that only that portion to the right of the page in the boxes marked "deleted" and "comment" were properly redacted; however, the magistrate finds that the remainder of the page should have been provided; (6) Page 59 — The magistrate finds that this page was properly redacted as it refers to the ongoing special audit; (7) Page 60 — The magistrate finds that this page was properly redacted in its entirety; (8) Page 61 — The magistrate finds that this page was properly redacted in its entirety; (9) Page 62 — The magistrate finds that, with the exception of the box at the right-hand side of the paper marked "deleted" and the handwritten note above that box, the remainder of the page should be provided as, instead of referencing the special audit, it references Ohio Adm. Code 5120:1-14-03 regarding minimum standards for the community corrections boards in the operation of CBCFs; (10) Pages 63-64 — Specifically referenced areas of concern relating to the special audit and were properly redacted; (11) Page 65 — This page consists of a list of advisory board members in 1998 and a list of CBCF's citizen advisory board members in 1998. This document does not, on its face, pertain to the special audit and should be provided; (12) Pages 66-71 — These pages were properly redacted as they concern specific areas being reviewed relative to the special audit; (13) Pages 72-80 are nothing more than a summary of hours worked relative to the Oriana audit or audits. Within these documents, there is no reference to the direction being taken in the special audit and the magistrate finds that these documents should be provided; and (14) Pages 81-94 — These sections include e-mails and time records specifically relative to the special audit. The magistrate finds that the documents located at pages 81, 83, and 94 were properly redacted as they provide information concerning the direction of the special audit; however, the remaining pages are nothing but time records providing a summary of the hours worked on the Oriana case and the magistrate finds that those documents should be provided. As such, the documents on pages 81, 83, and 94 were the only ones within pages 81-94 which were properly redacted.
 {¶ 122} In camera exhibit 31(c) is as follows:
A total of 14 lines on 6 pages located in the Legal correspondence files in the work papers were redacted. Respondent takes the position that these documents were redacted as privileged attorney-client advice and/or as attorney work product. The attorneys are Craig R. Mayton, Chief Legal Counsel, Auditor of State, and Pamela J. Vest, Deputy Chief Legal Counsel, Auditor of State. Both are licensed to practice law in the state of Ohio. The recipients of these communications include the Auditor of State, her auditors and staff. These records were provided to Relator, as redacted. [In Camera Exhibit 31(c)]
 {¶ 123} AOS asserts that these documents were properly redacted based upon the assertion of the attorney-client privilege; however, inasmuch as the magistrate has found that attorney-client privilege does not apply to the in-house counsel of AOS, all the documents redacted under this section should be provided to Oriana.
 {¶ 124} In camera exhibit 31(d) provides as follows:
A total of 8 pages located in the Legal correspondence files in the work papers were withheld. Respondent asserts privileged attorney-client advice and/or as attorney work product. The attorneys are Craig R. Mayton, Chief Legal Counsel, Auditor of State, and Pamela J. Vest, Deputy Chief Legal Counsel, Auditor of State. Both are licensed to practice law in the state of Ohio. The recipients of these communications include the Auditor of State, her auditors and staff. [In Camera Exhibit 31(d)]
 {¶ 125} AOS asserts that these documents were properly redacted based upon the assertion of the attorney-client privilege; however, inasmuch as the magistrate has found that attorney-client privilege does not apply to the in-house counsel of AOS, all the documents redacted under this section should be provided to Oriana.
 {¶ 126} In camera exhibit 31(e) is as follows:
A total of seven lines on 10 pages were withheld. Respondent takes the position that these documents related to investigatory techniques or procedures and were redacted pursuant to Revised Code Section149.43(A)(2)(c) which exempts from public disclosure records that information that would expose the confidentiality of specific confidential investigatory techniques or procedures pertaining to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature. [In Camera Exhibit 31(e)]
 {¶ 127} Pages 122-123 show an unredacted copy and a redacted copy of a "Status Report Compliance — Summit CBCF." Two sentences were redacted from item number 01.22.03 on grounds that they constitute a confidential law enforcement investigatory record. The magistrate finds that the record does pertain to a law enforcement matter and that the release of the record would create a high probability of disclosing specific confidential investigatory techniques or procedures relative to the audit; Pages 127-128 show an unredacted and redacted copy. The magistrate finds that the sentence redacted from page 127 constitutes a confidential law enforcement investigatory record pertaining to a law enforcement matter and that the release of it would create a high probability of disclosing specific investigatory work product. As such, all of the documents under in camera exhibit 31(e) were properly redacted.
 {¶ 128} In camera exhibit 32(a) is as follows:
A total of 75 calendar records were redacted. Respondent asserts these items reflected personal business or other work meetings not related to the performance audit, Oriana House, or were not otherwise responsive [to] the public record request. These records were provided to Relator, as redacted. [In Camera Exhibit 32(a)]
 {¶ 129} With this section, AOS redacted 75 calendar records. AOS's reason for redacting these calendar records is that they reflect personal business or other work meetings which were not related to the performance audit, Oriana, or were not otherwise responsive to the request. With the exception of the documents located at pages 138-139, 142-143, and 222-223, the records redacted in this portion were not responsive to the public records request. Instead, it is clear to the magistrate that those items did indeed reflect personal business or other work meetings which were not related to the documents requested; however, the magistrate noted that, on pages 133-139, a reference to an April 9, 2003 meeting had been redacted. In the questions posed to counsel for AOS which have also been made a part of this in camera record, the magistrate noted that it was unclear whether or not the reference on that date related to Oriana. Counsel for AOS responded that the record had been redacted by mistake and provided counsel for Oriana with this document prior to oral argument. Likewise, the magistrate noted that on pages 142-143, November 3 and 21 were shown as having been redacted on copies given to Oriana; however, the unredacted copies did not show any entries for either of those two dates. In response, AOS indicated that it was unable to locate an unredacted copy of Mr. Michels' November 2003 calendar entries. Mr. Michels reviewed his calendar for November 2003 and found that he had no entries on either November 3 or 21, and that he had no recollection of what, if any, meetings he may have attended on those dates. AOS indicated that it would continue its efforts to determine what entries may have been redacted from those dates. Lastly, at pages 222-223, the magistrate noted April 3, 2003 had been redacted and yet, every other reference to a status meeting between these two people had been given to Oriana. Upon review, counsel for AOS noted that this entry had been redacted in error and disclosed the document to Oriana before oral argument. As such, with the exception of the documents noted by the magistrate and already turned over to Oriana prior to oral argument, the magistrate finds that all other entries are unrelated to Oriana and the records requested in the public records request. As such, the magistrate finds those redactions proper.
 {¶ 130} In camera exhibit 32(b) is as follows:
An additional 20 pages of calendar records were withheld because of references to the ongoing special audit. Those working on the special audit are: Deb Hackathorn, David Varda, Doug Lumpkin, Cynthia Callender, Kevin Saionzkowski, Jim Manken, and John O'Nan. Respondent asserts that any meetings or notes of those working on special audit are withheld because the audit is still ongoing and the work papers are protected under R.C. § 117.26. [In Camera Exhibit 32(b)]
 {¶ 131} AOS asserts that these are calendar references to the ongoing special audit. Upon review, the magistrate notes that, to the extent these calendar references indicate an area of concern with regards to the special audit, the records are not subject to disclosure; however, to the extent the references do nothing more than indicate the date of a meeting, the magistrate believes they should be provided to Oriana. AOS asserts that any meetings or notes of those people working on the special audit should be considered work papers protected under R.C. 117.26; however, this magistrate disagrees. The dates of meetings does not fall under the exception as "work papers," even though they are dates where meetings were held regarding the special audit. However, the magistrate notes that, to the extent that any of the people named as attending those meetings constitutes an employee other than an employee of AOS, then the names of those people may be redacted under the confidential law enforcement exception. Otherwise, the magistrate finds that those documents should be provided to Oriana.
 {¶ 132} In camera exhibits 32(c) and (d) provide:
c) A total of 36 pages located in the files of Craig Mayton, Chief Legal Counsel, Auditor of State, and Pamela J. Vest, Deputy Chief Legal Counsel, Auditor of State were withheld.
Respondent claims attorney-client privileged communications to the Auditor of State and/or her auditors or staff. [In Camera Exhibit 32(c)(d)]
d) A total of 202 pages were withheld. Respondent claims attorney work product located in the files of Craig Mayton, Chief Legal Counsel, Auditor of State and Pamela J. Vest, Deputy Chief Legal Counsel, Auditor of State. [In Camera Exhibit 32(c)(d)]
 {¶ 133} AOS asserts that the documents under 32(c) and (d) were redacted because AOS claims attorney-client privilege; however, as noted previously, the attorney-client privilege does not extend between AOS and the attorney employees working for AOS. As such, all the documents found within in camera exhibits 32(c) and (d) should be provided. That ends the discussion concerning the in camera exhibits.
 {¶ 134} Oriana has also requested that this court order AOS to pay Oriana's attorney fees for this action. Pursuant to State ex rel.Pennington v. Gundler (1996), 75 Ohio St.3d 171, a court may award attorney fees pursuant to R.C. 149.43 where: (1) a proper request for public records pursuant to R.C. 149.43 has been made; (2) the custodian of the public records has failed to comply with the request; (3) the person making the request files a mandamus action pursuant to R.C. 149.43 in order to obtain copies of the requested documents; and (4) the person receives the requested public records only after the mandamus action is filed, thereby rendering the claim for a writ of mandamus moot. See, also, State ex rel. Dillery v. Icsman (2001), 92 Ohio St.3d 312. Furthermore, Oriana would have to demonstrate a sufficient benefit to the public in order to warrant a fee award and courts may consider the reasonableness of the custodian's failure to comply, because attorney fees are regarded as punitive in nature. State ex rel. Beacon JournalPublishing Co. v. Maurer (2001), 91 Ohio St.3d 54, 58.
 {¶ 135} In reviewing the facts of this case, the magistrate finds that an award of attorney fees is not warranted for the following reasons. First, it is clear by review of the record that both Oriana and AOS engaged in significant discussions regarding Oriana's requests and that AOS expended considerable amounts of time and effort in complying with those requests. Second, over 14,000 documents were made available to Oriana and AOS timely copied the 6,000 plus documents which Oriana requested. Third, the magistrate already determined that Oriana's February 26 and March 19, 2004 requests were overly broad. As such, any failure of AOS to turn over documents relative to those requests would not warrant an award of attorney fees. Lastly, to the extent that AOS asserted an attorney-client privilege, the magistrate finds that, even though this court has spoken on that issue and has held that the attorney-client privilege does not apply to in-house counsel, this court has also, subsequent to that decision, indicated that it believes its prior decision was not proper. This matter is currently pending before the Ohio Supreme Court for determination. Leslie, supra. As such, the magistrate finds that AOS did not withhold those documents in bad faith and, inasmuch as those are the only documents out of all the in camera documents which this magistrate has determined that AOS should turn over to Oriana in their entirety, the magistrate finds that, overall, AOS had a good-faith basis for redacting and withholding documents and that, in this instance, Oriana has not demonstrated a sufficient benefit to the public to warrant a fee award. As such, the magistrate recommends that the court deny Oriana's request for attorney fees.
 {¶ 136} Based on the foregoing, the magistrate finds that the February 26 and March 19, 2004 public records requests of Oriana were overly broad, AOS was not obligated to produce documents relative to those requests, and the fact that AOS later pointed out documents arguably relative to those requests does not constitute bad faith inasmuch as those documents had already been provided to Oriana pursuant to the February 3, 2004 request. However, relative to the in camera review of the documents, the magistrate does find that certain documents were inappropriately withheld and a writ of mandamus should be granted ordering AOS to disclose them. Specifically, page 55 should be provided to Oriana with the exception of the side box marked "deleted" and the handwritten portions in the margin on the right-hand side; page 58 should be provided to Oriana with the exception of the information in the boxes marked "deleted" and "comment"; page 61 should be provided to Oriana with the exception of the box at the right-hand side marked "deleted" and the handwritten note above that box; page 65 should be provided in its entirety; pages 72-80 should be provided in their entirety; within the pages numbered 81 — 94, including e-mails and time records, the magistrate finds that all those documents should be provided to Oriana with the exception of the documents located at pages 81, 83, and 94; all of the documents located within in camera exhibit 31(c) should be provided to Oriana; all of the documents provided under in camera exhibit 31(d) should be provided to Oriana; with the exception of the documents turned over to Oriana immediately preceding oral argument, the remainder of the documents under in camera exhibit 32(a) were properly redacted; within the documents listed under in camera exhibit 32(b), the magistrate finds that all of those documents should be provided to Oriana; however, AOS can redact the names of people attending those meetings if they were not an employee of AOS and they fall under the confidential law enforcement exception; all of the documents provided under in camera exhibits 32(c) and (d) should be provided to Oriana. Furthermore, with regard to AOS's mandamus action against Oriana, because the magistrate finds that Oriana is a "public institution" and as such a "public office" for purposes of R.C. 149.43, a writ of mandamus should be issued ordering Oriana to respond to AOS's public records request. Because ADP is not a party to this action, no writ of mandamus against ADP would be appropriate.